115 Cal.App.3d 236 (1981)
171 Cal. Rptr. 203
THE PEOPLE, Plaintiff and Respondent,
v.
HARVEY ANTHONY CARON, Defendant and Appellant.
Docket No. 37177.
Court of Appeals of California, Second District, Division Three.
January 26, 1981.
*239 COUNSEL
Burton Marks for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Anthony D. Blankley, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
KLEIN, P.J.
Appellant Harvey Anthony Caron (Caron) appeals from his conviction of possession of heroin (Health & Saf. Code, § 11350, subd. (a)) pursuant to a plea of guilty entered following the denial of his Penal Code section 1538.5 motion to suppress evidence.

PROCEDURAL BACKGROUND
Caron was charged with two counts of drug related offenses on March 24, 1976, after the execution of a search warrant at his residence. On April 23, 1976, he entered a plea of not guilty to these charges. Caron's motion to suppress the evidence seized during the *240 search of his residence was denied following a hearing on July 16, 1976. Thereafter on July 19, 1976, he entered a plea of guilty to the above set forth counts and the matter was continued to August 16, 1976 for sentencing.
When Caron failed to appear on the August 16 sentencing date, a bench warrant was issued, the execution of which resulted in Caron's appearance in court more than three years later on December 19, 1979. Sentencing was then continued to January 2, 1980, at which time Caron moved to withdraw the guilty plea. Following a hearing on January 16, 1980, the motion was denied and Caron was sentenced pursuant to the plea bargain to five years formal probation subject to his serving one year in county jail and abiding by certain other terms and conditions. When he then refused to accept any conditions of probation other than service of one year in county jail, Caron was sentenced to state prison for the term prescribed by law.

CONTENTIONS
Caron contends that the trial court erred (1) in finding that the search warrant was supported by a legally sufficient affidavit and (2) in denying his motion to withdraw his guilty plea.

DISPOSITION
While finding Caron's arguments to be unmeritorious, we remand the cause for resentencing in accordance with the views expressed herein and affirm the judgment in all other respects.

DISCUSSION
(1a) Caron's contention that the affidavit in support of the search warrant was insufficient to justify issuance of the warrant is unpersuasive. (2) "[I]t is well settled that `"[t]he warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit...."' (Italics in original. People v. Benjamin (1969) 71 Cal.2d 296, 302 [78 Cal. Rptr. 510, 455 P.2d 438], citing People v. Govea (1965) 235 Cal. App.2d 285, 297 [45 Cal. Rptr. 253].) In examining the affidavit for sufficiency of the *241 facts therein to support the magistrate's finding of probable cause, it is axiomatic that the courts are to interpret the affidavit in a common sense, nontechnical manner. (United States v. Ventresca (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; People v. Mesa (1975) 14 Cal.3d 466, 469 [121 Cal. Rptr. 473, 535 P.2d 337].) The reviewing court will pay substantial deference to the magistrate's determination of probable cause (Aguilar v. Texas (1964) 378 U.S. 108, 111 [12 L.Ed.2d 723, 726-727, 84 S.Ct. 86]) and may sustain a search where one without a warrant would fail (United States v. Ventresca, supra, 380 U.S. 102, 109 [13 L.Ed.2d 684, 689])." (People v. Emanuel (1978) 87 Cal. App.3d 205, 212-213 [151 Cal. Rptr. 44]; see People v. Cook (1978) 22 Cal.3d 67, 84 [148 Cal. Rptr. 605, 583 P.2d 130]; People v. Superior Court (Bingham) (1979) 91 Cal. App.3d 463, 470 [154 Cal. Rptr. 157].) "The guiding authority on the requirements of a search warrant's probable cause is found in Aguilar v. Texas (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and Spinelli v. United States (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. California's courts have stated the rule of those cases in this manner: `(1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable.' (Price v. Superior Court (1970) 1 Cal.3d 836, 840 [83 Cal. Rptr. 369, 463 P.2d 721]; People v. Hamilton (1969) 71 Cal.2d 176, 179-180 [77 Cal. Rptr. 785, 454 P.2d 681].)" (People v. Superior Court (Bingham), supra, 91 Cal. App.3d at p. 470; People v. Superior Court (Johnson) (1972) 6 Cal.3d 704, 711 [100 Cal. Rptr. 319, 493 P.2d 1183].)
(1b) The affidavit in question herein contained accounts of numerous complaints of excessive foot and vehicular traffic at Caron's residence made to police by Caron's neighbors. License numbers were taken down by these citizens from vehicles found to be registered to known narcotics offenders. Additionally, one of Caron's neighbors had informed police on May 2, 1975, that Caron had invited him to enter into a joint venture in marijuana sales.
The affidavit further noted that on March 23, 1976, police received an anonymous tip that Caron and another individual suspected to have been involved in illegal drug activities had been involved in a previous *242 marijuana sale and were going to be involved in a cocaine sale at Caron's residence that night. The affiant officer then proceeded to Caron's address, watched the house and, after observing considerable activity, saw a man who had entered the house 15 minutes earlier put an "unknown object" in his pocket as he was leaving. Thirty minutes later this same individual was arrested and found to be in possession of cocaine.
The affidavit then stated that the affiant was an experienced narcotics officer who, based upon his experience, believed illegal narcotics activity was taking place at Caron's residence.
The information comprising the affidavit was presented in a factual manner, for the most part establishing the personal knowledge of its sources. (3) Although there are no facts in the officer's affidavit to indicate any of the informants had been utilized in the past and found to be reliable, "information obtained from an untested informant may be deemed sufficient if corroborated in essential aspects by other facts, sources or circumstances. [Citation.]" (Caligari v. Superior Court (1979) 98 Cal. App.3d 725, 732 [159 Cal. Rptr. 534]; see People v. Emanuel, supra, 87 Cal. App.3d at p. 213.) Moreover, "citizen-informants" are inherently more reliable than other informers. (People v. Ramey (1976) 16 Cal.3d 263, 268-269 [127 Cal. Rptr. 629, 545 P.2d 1333]; People v. Superior Court (Bingham), supra, 91 Cal. App.3d at p. 471.)
(1c) While the observations of Caron's neighbors and the affiant officer may not in themselves have been sufficient to establish probable cause, they were, when viewed as a whole, sufficient to corroborate the substantive information received by police as to Caron's attempt to involve his neighbor in marijuana sales and his involvement in a cocaine sale at his residence.[1]
Accordingly, the trial court did not abuse its discretion in finding the affidavit sufficient to support the issuance of the search warrant.
(4a) Caron's contention that the trial court erred in denying his motion to withdraw his guilty plea is also without merit.
*243 (5) A guilty plea accepted by the court is tantamount to a conviction. (People v. Stanworth (1974) 11 Cal.3d 588, 606 [114 Cal. Rptr. 250, 522 P.2d 1058]; Smith v. Municipal Court (1977) 71 Cal. App.3d 151, 154 [139 Cal. Rptr. 121].) Accordingly, it may not be withdrawn without adequate grounds. (6) "The granting of [a motion to set aside a guilty plea] is within the sound discretion of the trial court and must be upheld unless an abuse thereof is clearly demonstrated. [Citations.] Trial courts are expressly directed to give a liberal construction to the provisions of [Penal Code] section 1018 in the interest of promoting justice.[[2]] ... [¶] [T]he test of abuse ... is whether after consideration of all relevant factors there was good cause shown for granting the motion and whether justice would be promoted thereby. [Citations.]" (People v. Superior Court (Giron) (1974) 11 Cal.3d 793, 796-798 [114 Cal. Rptr. 596, 523 P.2d 636]; People v. Cartwright (1979) 98 Cal. App.3d 369, 386 [159 Cal. Rptr. 543].)
(4b) In the case at bar, when Caron entered his guilty plea on July 19, 1976, he was told that as a result of his guilty plea to possession of heroin he would not be sentenced to state prison and the second charge would be dropped. He was also informed of the possible consequences of his plea:
"You will be placed on felony probation. As a condition of felony probation, you could be sentenced up to one year in the county jail. There would also be certain other terms and conditions of probation. Should you violate any of those terms and conditions of probation and return to this Court and the Court finds that you did violate those terms and conditions, the Court could then sentence you to state prison. The penalty for this offense, if you are sentenced to state prison, provided for in the terms and conditions of your probation is for a minimum of two years to ten years."
Caron was then asked if he understood the consequences of entering such a plea and if he still desired to enter such a plea. He responded to both questions in the affirmative. Caron was then advised of the constitutional rights he was relinquishing as a result of the plea and waived those rights. He indicated that he had been given no promises other *244 than those which were revealed in open court and that he had not been threatened or coerced into entering a guilty plea. Caron then stated, "I am doing it of my own free will."
However, on January 16, 1980, Caron testified at the hearing on his motion to withdraw the guilty plea that he had so pleaded not because he was guilty, but rather because he did not want to be taken into custody, an eventuality he claimed his attorney had told him was assured if he did not plead guilty. He stated that he wanted to remain free on bail so that he could appear for sentencing in federal court on an unrelated matter and thereby avoid forfeiting his bond.[3] Thereafter the trial court found that the plea was well taken and that there existed no good cause for granting the motion.
The trial court then noted it was "not going to sentence any differently than the plea bargain" and continued: "It will be proceedings suspended. Formal probation for a period of five years, on the following terms and conditions:
"Number one, that he serve one year in the county jail;
"Number two, that he not use or possess any narcotics or dangerous drugs. Restricted or dangerous drugs or associated paraphernalia, except with a valid prescription;
"Stay away from places where users congregate;
"Do not associate with persons known by him to be narcotic or drug users or sellers;
"Submit to periodic anti-narcotic tests as directed by the probation officer;
"Support dependents, if any, as directed by the probation officer;
"Seek and maintain training, schooling or employment as approved by the probation officer;
"Maintain residence as approved by the probation officer;
*245 "That he submit his person and property to search or seizure at any time of the day or night by any law enforcement officer, with or without a warrant;
"Obey all laws, orders, rules and regulations of the probation department and of the Court;
"And also all the orders, rules and regulations of the county sheriff while incarcerated in the county jail.
"Any alleged violation of any of these will be reported to this Court within 72 hours of such violation coming to the attention of the county sheriff or of the probation officer.
"The sentence imposed will be consecutive to any other sentences the defendant may be required to serve either in state or federal prison.
"This is a predeterminate sentence case. Normally it would carry a penalty of two to ten years in state prison in the event the defendant would violate probation and be found to be in violation of probation.
"As far as the determinate sentence law, that would be something for the  for them to set when they consider his eligibility in the event he would go to state prison."
Immediately thereafter Caron's counsel informed the trial court: "Defendant respectfully declines to accept the terms and conditions of probation as imposed by the Court, and will only accept the terms and conditions of probation as specified in the plea bargain. That is to say under CC  1296, I think, of the Penal Code.
"We specify that the terms of the plea bargain is that the defendant be given a maximum term of imprisonment of one year in the county jail. There is no mention of terms or conditions of probation.
"These particular terms and conditions of probation are not only onerous, but they are outrageous in terms of the offense.
"Therefore, the defendant declines to accept any terms and conditions of probation except that the proceedings be suspended;
*246 "That the defendant is subject to a summary, unsupervised probation, probation for a period of one year. The only condition of that probation be that he serve that year in the county jail;
"And that upon the serving of that sentence, that probation is automatically terminated under 1203.4."
When he entered his plea, Caron clearly was advised that "[t]here would also be certain other terms and conditions of probation." At that time he did not seek to have these terms and conditions further explained or enumerated. Far from being "onerous" and "outrageous," the conditions imposed by the trial court were reasonable in light of the offense (see People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal. Rptr. 905, 541 P.2d 545]; In re White (1979) 97 Cal. App.3d 141, 146 [158 Cal. Rptr. 562]) and not unlike those typically imposed under such circumstances. (See, e.g., People v. Kasinger (1976) 57 Cal. App.3d 975, 977-978 [129 Cal. Rptr. 483]; People v. Constancio (1974) 42 Cal. App.3d 533, 539-540 [116 Cal. Rptr. 910].)
Thus, having waived his constitutional rights after they were fully disclosed to him (see Boykin v. Alabama (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709]; In re Tahl (1969) 1 Cal.3d 122, 130 [81 Cal. Rptr. 577, 460 P.2d 449]), the record reflects that Caron freely and voluntarily entered the guilty plea and that the trial court sentenced Caron according to the plea bargain (cf. Pen. Code, § 1192.5; People v. Kaanehe (1977) 19 Cal.3d 1, 13-14 [136 Cal. Rptr. 409, 559 P.2d 1028]; People v. Johnson (1974) 10 Cal.3d 868, 872-873 [112 Cal. Rptr. 556, 519 P.2d 604]). Accordingly, the trial court did not abuse its discretion in denying the motion to withdraw the guilty plea.
(7) "[T]he requirement [that] all participants must conduct themselves openly and with the utmost fairness" is implicit in the concept of plea bargaining. (People v. Ramos (1972) 26 Cal. App.3d 108, 111 [102 Cal. Rptr. 502]; People v. Pinon (1973) 35 Cal. App.3d 120, 125 [110 Cal. Rptr. 406].) Equally "[w]ell established is the rule that the People will be held strictly to the terms of a plea bargain made with a criminally accused. [Citations.] It seems reasonable and just, at least where no public policy, or statutory or decisional or constitutional principle otherwise directs, that the accused also be held to his agreement." (In re Troglin (1975) 51 Cal. App.3d 434, 438 [124 Cal. Rptr. 234]; People v. Welge (1980) 101 Cal. App.3d 616, 624 [161 Cal. Rptr. 686].)
*247 (8) However, we are mindful of the principle that "[i]f the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.]" (In re Bushman (1970) 1 Cal.3d 767, 776 [83 Cal. Rptr. 375, 463 P.2d 727], disapproved on other grounds in People v. Lent (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal. Rptr. 905, 541 P.2d 545]; People v. Mason (1971) 5 Cal.3d 759, 764 [97 Cal. Rptr. 302, 488 P.2d 630], disapproved on other grounds in People v. Lent, supra, 15 Cal.3d 481, 486, fn. 1; Marts v. Superior Court (1975) 49 Cal. App.3d 517, 520 [122 Cal. Rptr. 687].) Accordingly, Caron must be given the opportunity of choosing between the bargained-for sentence, together with its terms and conditions of probation, and, should he decide to reject such reasonable terms and conditions, a sentence to state prison for the term prescribed by law.
(4c) "`Here ... it may reasonably be said that [Caron's] attempted rejection of the agreement which induced the People's consent to his bargained for pleas and other advantages, is calculated to perpetuate a fraud upon the court and the People.'" (People v. Welge, supra, 101 Cal. App.3d at p. 624; In re Troglin, supra, 51 Cal. App.3d at p. 439.) Caron has manipulated the system to his own advantage. He disappeared for three years' time and is now seeking to force upon the trial court his own version of a sentence or to withdraw his plea, thereby prejudicing the People's case to the point where gaining the evidence to prove him guilty would be a near impossibility. The criminal justice system is not to be subjected to such machinations. It was hardly an abuse of discretion for the trial court to refuse to set aside the guilty plea under all the circumstances herein since justice would not be promoted thereby.
The cause is remanded for resentencing in accordance with the views expressed herein; in all other respects the judgment is affirmed.
Allport, J., and Potter, J., concurred.
A petition for a rehearing was denied February 25, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 25, 1981.
NOTES
[1] Although the affidavit may have contained some outdated information, much of the information had been acquired within one week of the issuance of the warrant and there was considerable evidence of continuous illegal activity. (People v. Thompson (1979) 89 Cal. App.3d 425, 429-430 [152 Cal. Rptr. 495]; cf. Alexander v. Superior Court (1973) 9 Cal.3d 387, 393 [107 Cal. Rptr. 483, 508 P.2d 1131].)
[2] Penal Code section 1018 provides in pertinent part: "On application of the defendant at any time before judgment the court may ... for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted.... This section shall be liberally construed to effect these objects and to promote justice."
[3] The trial court properly found this testimony "unbelievable" in view of Caron's subsequent failure to appear in federal court for sentencing.