192 Cal.App.3d 51 (1987)
237 Cal. Rptr. 249
THE PEOPLE, Plaintiff and Respondent,
v.
JAVIER AGUILAR CARDENAS, Defendant and Appellant.
Docket No. D004424.
Court of Appeals of California, Fourth District, Division One.
May 22, 1987.
*54 COUNSEL
John McDougall, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Steven H. Zeigen and Michael D. Wellington, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[1]]
OPINION
BUTLER, J.
A jury convicted Javier Aguilar Cardenas of second degree burglary (Pen. Code,[2] § 459) and he admitted three previous felony convictions. The trial court imposed sentence totaling six years: the three-year upper term for the burglary plus one year consecutive for each felony prior pursuant to section 667.5, subdivision (b).
Cardenas now appeals, contending the court's denial of his motion to proceed in propria persona deprived him of a fair trial, and use of his previous in-prison felony conviction to enhance his sentence was improper.

I-III[*]
.... .... .... .... ....

*55 IV
Cardenas claims the court erroneously used his in-prison felony conviction to enhance his present sentence under section 667.5, subdivision (b).
The People alleged Cardenas had suffered four earlier felony convictions: (1) 1978 convictions for unlawful taking or driving of a vehicle (Veh. Code, § 10851) and receiving stolen property (§ 496, subd. 1); (2) a 1980 conviction for assault with a deadly weapon (§ 245, subd. (a)); (3) 1981 convictions for burglary (§ 459) and unlawful taking or driving of a vehicle; and (4) a 1982 conviction for possession of a sharp instrument (§ 4502) committed while serving his 1981 prison term. The information also alleged Cardenas served separate prison terms for the 1980, 1981 and 1982 convictions within the meaning of section 667.5, subdivision (b), for purposes of enhancement. While the jury was deliberating on the present case, the court granted the People's motion to strike the 1978 prior and Cardenas admitted the three remaining felony convictions.
At sentencing, Cardenas argued under People v. Ruiz (1982) 130 Cal. App.3d 758 [181 Cal. Rptr. 875], the prison terms for his 1981 burglary conviction and 1982 in-prison felony were served during a single continuous prison commitment; therefore, only one section 667.5 enhancement should be imposed. The People agreed. The court, however, read Ruiz differently, concluding a consecutive sentence imposed pursuant to section 1170.1, subdivision (c), for an in-prison felony constituted a separate prison term and sentenced Cardenas to three additional consecutive years for his prior convictions.
We first review the law and legislative purposes underlying sections 667.5 and 1170.1, subdivision (c), then resolve Cardenas's contentions.

A.
The determinate sentencing law (DSL) permits enhancement of felony sentences for prior felony convictions resulting in state prison commitment. (§ 667.5, subds. (a) & (b).) Section 667.5, subdivision (b), governs the imposition of one-year consecutive sentence enhancements for nonviolent felony offenses (cf. § 667.5, subd. (c)). Enhancements are imposed for each "prior separate prison term" the defendant served, except for those previous prison terms unavailable for enhancement by operation of the five-year "washout" period. (§ 667.5, subd. (b), italics added.)
Section 667.5, subdivision (g) (subdivision (g)), defines a prior separate prison term as "a continuous completed period of prison incarceration *56 imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration."
Beginning with People v. Espinoza (1979) 99 Cal. App.3d 59 [159 Cal. Rptr. 894], much attention has been given to interpreting subdivision (g). (See generally, People v. English (1981) 116 Cal. App.3d 361 [172 Cal. Rptr. 122]; People v. George (1980) 109 Cal. App.3d 814 [167 Cal. Rptr. 603]; People v. Butler (1980) 104 Cal. App.3d 868 [162 Cal. Rptr. 913], repudiating its earlier decision in People v. Cole (1979) 94 Cal. App.3d 854 [155 Cal. Rptr. 892]; People v. James (1980) 102 Cal. App.3d 728 [162 Cal. Rptr. 548]; People v. Mathews (1980) 102 Cal. App.3d 704 [162 Cal. Rptr. 615]; People v. Welge (1980) 101 Cal. App.3d 616 [161 Cal. Rptr. 686].)
The plain language of subdivision (g) indicates after a defendant is committed to state prison, additional concurrent or consecutive sentences imposed in the same or subsequent proceedings are deemed to be part of the same prison term. (See People v. Burke (1980) 102 Cal. App.3d 932 [163 Cal. Rptr. 4]; People v. Williamson (1979) 90 Cal. App.3d 164 [153 Cal. Rptr. 48].) (1) Generally, the number of separate prison terms available for enhancement is determined by identifying the "continuous completed" terms of prison incarceration served. (People v. Welge, supra, 101 Cal. App.3d 616 at pp. 620-621; People v. Espinoza, supra, 99 Cal. App.3d 59 at pp. 68-76.) For example, multiple prior convictions served concurrently constitute one separate prison term for which only one sentence enhancement can be imposed. (People v. English, supra, 116 Cal. App.3d 361 at p. 372; People v. Burke, supra, 102 Cal. App.3d 932 at pp. 942-943.) Recommitment to prison for a new offense after the earlier term is "completed" results in two separate prison terms.
In People v. Espinoza, supra, 99 Cal. App.3d 59, the defendant was on parole for three prior offenses when he committed a burglary, causing his parole to be revoked. (At p. 63.) He contended the prior imprisonment could not be used to enhance his sentence in the current crime because the term of imprisonment for his earlier offenses was not "completed" as required by subdivision (g). He argued his parole revocation and recommitment to prison resulted in his continuing to serve the original sentence imposed for the three priors. (At p. 71.) The Court of Appeal disagreed, holding: "[S]ection 667.5 does not define `a continuous completed period of prison incarceration.' The best indication of what the Legislature meant by that expression is found, we believe, in section 3000 in which the Legislature speaks of the `expiration of a term of imprisonment' in contradistinction to release on parole and `completion of parole, or ... the end of the maximum *57 statutory period of parole.' The language of section 3000 makes plain the legislative assumption that a term of imprisonment expires prior to release on parole. A term of imprisonment which has expired, has been `completed.' We conclude, therefore, that a term of imprisonment is `completed' at the expiration of the stated term notwithstanding the undoubted legal truism that additional imprisonment on revocation of parole is referable to and in legal theory a part of an original term and notwithstanding that for purposes of determining how many prior separate prison terms a convicted felon has suffered, reimprisonment upon revocation of parole not accompanied by a new commitment is `included' in the prior prison term." (Id. at pp. 72-73.)
Agreeing with the result in Espinoza, In re Kelly (1983) 33 Cal.3d 267, 270 [188 Cal. Rptr. 447, 655 P.2d 1282], construes subdivision (g) as follows: "a prior separate prison term is defined as that time period a defendant has spent actually incarcerated for his offense prior to release on parole." (Italics added.) After the specified prison term is "completed," subsequent parole revocations without accompanying new commitments are part of the original prison term; therefore, only one prior separate prison term is available for future enhancement. (Kelly, supra, at pp. 270-271; People v. Espinoza, supra, 99 Cal. App.3d 59 at pp. 68-76.) If, however, a parole revocation is accompanied by a prison term for a new offense, the new commitment is a prior separate prison term within the meaning of subdivision (g); once the term is served it can be used to enhance later felony sentences. (See Kelly, supra, at pp. 270-271.)
(2a) The legislative purpose in providing enhanced sentences for prior prison terms served is to increase the punishment incurred by repeat offenders and thereby deter recidivism. (In re Kelly, supra, 33 Cal.3d 267 at p. 272; People v. Espinoza, supra, 99 Cal. App.3d 59 at p. 74.) Accordingly, the target for enhancement penalties is "new offenses" committed by defendants who have served prior separate prison terms for felony convictions.[5] (See § 667.5.)
(3) A fundamental principle of statutory construction is every word in a statute must be given meaning and effect if at all possible. (People v. Gilbert (1969) 1 Cal.3d 475, 480 [82 Cal. Rptr. 724, 462 P.2d 580].) (2b) The term "new offense" reasonably means newly committed crimes subject to sentence enhancement as distinguished from "prior offenses" committed by the person charged with a new offense. (See In re Panos (1981) 125 Cal. App.3d 1038 [178 Cal. Rptr. 483].)
*58 The question here is whether a consecutive term imposed for a felony committed in prison comprises the same continuous prison term as the "uncompleted" sentence being served.[6]

B.
(4) The Legislature enacted section 1170.1, subdivision (c) (subdivision (c)), to punish crimes committed in prison more severely than crimes committed "`on the outside.'" (People v. McCart (1982) 32 Cal.3d 338, 340 [185 Cal. Rptr. 284, 649 P.2d 926].) Subdivision (c) provides: "In the case of any person convicted of one or more felonies committed while the person is confined in a state prison, or is subject to reimprisonment for escape from such custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions which the person is required to serve consecutively shall commence from the time such person would otherwise have been released from prison. If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a), except that the total of subordinate terms may exceed five years. The provisions of this subdivision shall be applicable in cases of convictions of more than one offense in different proceedings, and convictions of more than one offense in the same or different proceedings." (Italics added.)
Persons committing in-prison felonies are subject to full-term consecutive sentences and are required to serve their term for such conviction after the completion of their earlier prison commitment. (McCart, supra, at pp. 341-343; People v. Lamont (1986) 177 Cal. App.3d 577, 584-585 [223 Cal. Rptr. 52]; In re Sims (1981) 117 Cal. App.3d 309, 314 [172 Cal. Rptr. 608].)
(5) "[W]hen a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." (Stillwell v. State Bar (1946) 29 Cal.2d 119, 123; People v. McCart, supra, 32 Cal.3d 338 at p. 344.) Like the enhancement statute, subdivision (c) uses the term "new offenses," construed in section 667.5 as referring to current crimes committed by persons previously convicted of felony offenses. This interpretation is equally applicable to prison inmates committing new felony offenses while in custody.
*59 In addition, the language of subdivision (c) requiring the consecutive "term of imprisonment ... commence from the time such person would otherwise have been released from prison," shows the Legislature intended something more than ordinary consecutive sentencing. Section 669, authorizing imposition of sentences running "concurrently" or "consecutively" upon conviction of two or more crimes, contains no language qualifying or specifying when service of a consecutive term commences. Thus, we do not equate the language of subdivision (c) with that of section 669, to avoid rendering the additional language in subdivision (c) surplusage. (People v. Gilbert, supra, 1 Cal.3d 475 at p. 480.)
(6) A qualifying phrase generally applies to the word, phrase or clause immediately preceding it, unless context or evident meaning requires a different construction. (People v. Cruz (1974) 12 Cal.3d 562, 566 [116 Cal. Rptr. 242, 526 P.2d 250].) Here, the language modifying "term" or "term of imprisonment" describes with particularity a point in time when the inmate's prison commitment is completed except for the prisoner's physical release from custody; a circumstance not unlike a prisoner awaiting release on parole after completing the stated period of incarceration for his offense. (See In re Kelly, supra, 33 Cal.3d 267 at pp. 270-273.)
With these interpretations of sections 667.5 and subdivision (c), in mind, we review Cardenas's contentions.

C.
(7) Cardenas asserts, as he did at sentencing, the consecutive sentence he received for violating section 4502 while serving his 1981 burglary commitment did not result in a "separate prison term" within the meaning of section 667.5, subdivision (b). He argues the consecutive term for the in-prison felony was imposed before the 1981 prison commitment was completed; therefore, he served both terms as a "continuous completed period of prison incarceration" for which only one enhancement is proper. We disagree.
The required "continuous completed period of prison incarceration" in subdivision (g) needed to constitute a separate prison term for purposes of enhancement is equal to the stated prison commitment for the particular offense. (In re Kelly, supra, 33 Cal.3d 267 at p. 270.) Prison commitments commenced after a previous term is "completed" constitute separate periods of incarceration.
The legislative purpose underlying sentence enhancements is to penalize recidivist defendants by increasing any sentence imposed in each "new *60 offense" in proportion to the number of prior separate prison terms served (§ 667.5). The Legislature enacted subdivision (c), which focuses on new offenses committed while in prison. Logic dictates the statutory scheme be interpreted in a manner which serves the individual purposes of these code sections, provides for similar treatment of new felony offenses whether committed in or out of prison and avoids absurd results when applied. Subdivision (c) is entirely consistent with the Legislature's intention to increase punishment for repeat offenders in subsequent crimes. By mandating the sentences for in-prison offenses be served only after all other prison terms are completed, subdivision (c) comports with the definition of separate prison terms articulated in In re Kelly, thus satisfying the condition precedent to imposing sentence enhancements as a consequence of the new offense committed while incarcerated. Nothing in this rule requires the prisoner enjoy a period of freedom between completing an earlier term and the start of the next separate prison commitment.
Under Cardenas's theory, new felony offenses committed in prison could never be used as sentence enhancements. Such a result is absurd. It is inconceivable the Legislature intended a defendant's subsequent crimes be exempt from recidivist enhancement merely because the offense was committed inside prison walls. Equally absurd is the idea the prisoner must be released, then recommitted to prison to validate the separateness of the two prison terms.

D.
Cardenas's reliance on Ruiz is misplaced. Ruiz had suffered three prior felony convictions: in 1959 he was sentenced to six months to five years for possession of metal knuckles; in 1961 he received a five-years-to-life sentence for possession of a dirk or dagger in prison; and in 1965 he began serving a six-months-to-ten-years sentence for voluntary manslaughter. All prior sentences were concurrent and Ruiz was continuously confined from 1959 until he was granted parole in 1975. (People v. Ruiz, supra, 130 Cal. App.3d 758 at p. 760.) Ruiz argued his continuous commitment for the three offenses exposed him to only one enhancement in a subsequent sentencing. The Court of Appeal rejected Ruiz's theory because it would permit a prisoner to commit a series of continuous offenses in prison, then after being released suffer only one enhancement in a subsequent conviction. (P. 763.) The court held the "mere fortuity of having committed the second crime prior to [Ruiz's] release from prison should not preclude the imposition of two enhancements, where, as here, his 1959 commitment expired prior to the imposition of the 1965 prison term." (Ibid.) The court struck the one-year enhancement for Ruiz's in-prison violation solely because the sentence imposed had not expired when the 1965 concurrent commitment commenced. (Ibid.)
*61 Here, Cardenas was sentenced to a consecutive term commencing after the expiration of his earlier prison commitment. Like Ruiz, we conclude the expiration of a previous term is the gravamen of a subsequent separate prison term. Moreover, the court in Ruiz did not view the temporal continuity of Ruiz's incarceration as a bar to recognizing more than one separate term when legal reality so required.

E.
(8) Cardenas admitted all three prior felony convictions alleged in the information. The information also alleged Cardenas served a separate prison term for each earlier conviction. Generally, an admission of prior convictions where the charging information specifically alleges the convictions resulted in prior separate prison terms is deemed an admission such prison terms were separately served. (People v. Welge, supra, 101 Cal. App.3d 616 at pp. 623-624; see also People v. James (1978) 88 Cal. App.3d 150, 161-162 [151 Cal. Rptr. 354].) By admitting his prior convictions, Cardenas voluntarily exposed himself to possible sentence enhancement to the same extent permitted under section 667.5, subdivision (b), if all three earlier prison terms are found to be "separate" pursuant to subdivision (g).

F.
(9) Finally, Cardenas meritlessly asserts a defendant receiving the harsher punishment of consecutive sentencing for an in-prison felony under subdivision (c), should not suffer a "second enhancement in the future." No double punishment results from the independent effect of these statutes  section 1170.1 affects current sentencing following conviction for the new offense; section 667.5 affects only enhancement of subsequent felony convictions and can be entirely avoided by remaining free of future felonious conduct.
Judgment affirmed.
Kremer, P.J., and Todd, J., concurred.
A petition for a rehearing was denied June 10, 1987, and appellant's petition for review by the Supreme Court was denied September 3, 1987.
NOTES
[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of sections I, II and III.
[2] All statutory references are to the Penal Code unless otherwise specified.
[*] See footnote 1, ante, page 51.
[5] Section 667.5, subdivisions (a) and (b), provide for "washout" periods of 10 and 5 years. A defendant remaining free of both prison custody and the commission of an offense which results in a felony conviction for the appropriate time period is no longer subject to sentence enhancement pursuant to this section.
[6] Our research has disclosed only one case, People v. Smith (1985) 166 Cal. App.3d 1003, 1010 [212 Cal. Rptr. 737], directly addressing this issue. Smith holds, a defendant serving a felony prison sentence, who is subsequently convicted and sentenced consecutively for an in-prison felony, serves only one separate prior prison term for purposes of section 667.5. However, the court in Smith does not explain how it reached this conclusion nor cite any legal authority for it. We decline to follow Smith.